Price, C. J.
At the February term of the court of common pleas of Putnam county held in 1899, the plaintiff in error was found guilty of the crime of manslaughter and sentenced to a term in the penitentiary.
He prosecutes error in this court, assigning error in ad *167 mitting and excluding evidence; error in the charge of the court, and also in refusing to charge as requested; that the verdict is contrary to and against the weight of the evidence, and is not supported by sufficient evidence; that there was misconduct of counsel for the State in his argument to the jury. .
A summary of the facts will afford light on the questions presented by the record. As charged in the indictment, Sol. S. Wise was killed on the 7th day of December, 1898, and his death was caused by the discharge of a revolver which was in the possession of plaintiff in error. There was no one present at the time except Wise, the deceased, and Weller, the accused, and .the shooting occurred in the storeroom of Wise, in Ottawa, about eight o’clock in the evening.
It is not claimed that there had been, or that there then was any trouble or ill-feeling between the two, but on the contrary, it appears, that they were both young men and intimate personal friends.
A witness testified, that shortly before the dead body of Wise was found on the floor of his storeroom, he was in the store for a few moments and saw Wise and plaintiff in error looking at a revolver. The cartridges were out and lying on the counter near where Wish was sitting. Witness looked at the revolver, and passed out of the room leaving Wise and Weller where he found them,
The body of Wise was discovered by Miss Kraus and her brother about the time life became extinct. Weller was not then in the room.
The account of the shooting which he gave directly after it occurred, to Mrs. Bruon at whose house he roomed, and the account he gave to the officers who arrested him shortly thereafter, were relied upon almost entirely to prove the body of the crime. It appears from these statements, and from the evidence of Weller on the trial, that on the 7th of December, or the preceding day, the accused purchased at a hardware store in Ottawa, a new hammerless revolver, which he says he needed for his protection and defense, while carrying large sums of money from the bank where he was employed, several miles in the country to pay hands engaged in constructing a railroad. At noon of the 7th he *168 showed this new weapon to Wise at the hotel where they boarded. About 8 o’clock in thé evening of that day, Weller was passing the store of Wise, and they met at the door, and on the invitation of Wise, Weller entered the-store and they went to near the center of the room where Wise requested to see the revolver again, Weller took it from his out-side overcoat pocket, removed the cartridges and laid them on the counter. Wise took it, as Weller says, and snapped it once or twice, and handed it back to Weller who restored the cartridges, and then, either placed or dropped it in the same overcoat pocket, and was leaving the room, when Wise remarked something about that being a funny place to carry a gun; as a man could come up and get ”the drop” on Weller before he could get his gun out. Or, as one of the officers quotes it from the statement of Weller: ‘‘Wise said what would you do if a man would come up and poke a gun in your face? The minute you would go to pull your gun out of your pocket, he would shoot you.” This officer testifies, that Weller told him, that he replied to Wise; ‘‘A man would be a fool to do that; just shoot through your coat, ” and then the gun went off.” Weller testifies to about the same as the conversation between him and Wise, only he says his reply was, ‘‘a naan would shoot through his coat.” When this reply was made, W'eller put his hand either into, or on the outside of the pocket containing the revolver. He testifies he placed his hand against his coat outside the pocket and then the revolver was discharged, and Wise was shot. He denies-touching the hammer or trigger, and denies pointing or intending to point the weapon towards Wise, and claims the-killing was purely accidental.
After seeing the fatal result of the discharge, he went to the door, looked up and down street, and seeing no one, he walked rapidly to Bruon’s residence and asked Mrs. Bruon to telephone a physician to go to the store, which was done. He then told her his version of the occurrence,
The foregoing is a fair and sufficient statement of the facts.
The prosecution is based on the theory that when Weller made reply to Wise about one shooting through his coat, he so handled or raised the muzzle of the revolver while in *169 his pocket, as to point it at Wise, which, if done intentionally, was an unlawful act, and the shooting while engaged in such unlawful act constitutes manslaughter. Or, if the proofs do not establish such pointing of the weapon, that Weller was careless and reckless in the use made of it when it was discharged, and if his act and conduct were not in violation of any penal statute, he was guilty of an offense at common law, which may be regarded as the unlawful act mentioned in the definition of manslaughter.
The defendant was a witness in his own behalf, and after he had testified in chief as to all the circumstances attending the killing of Wise, he was subjected to a long and minute cross-examination. To some questions hs counsel objected and excepted to the overruling of the same on the ground that the evidence elicited was not competent under the indictment. The following will serve as samples of the evidence complained of: The State asked the accused, in question 67, if he did own a revolver while he lived at Cresswell? And in question No. 90, if he did own a revolver that he gave to Mrs. Schell before he purchased the new one? And in question 100, if Griswold and Kirkendall did not take the revolver from him? Other answers in cross-examination disclosed that the accused had lived at Cress-well a year or more prior to his coming to Ottawa, and it is urged that the evidence of ownership of other revolvers and incidents connected therewith was not competent.
The accused had said in chief that the shooting was accidental, and while it was not necessary for the state to prove the facts here called in question, in order to establish the crime of manslaughter, the inquiry was pertinent as touching his familiarity with weapons of this kind and their use and dangers if not carefully handled. It was sufficient to support the indictment to prove that the killing was done in a sudden quarrel, or while defendant was in the commission of some unlawful act. But while this is true, the defendant, by his plea of not guilty, put in issue every fact necessary to make a case for the state. By such plea, he denied the shooting; denied that it was done with a revolver, or by him with any weapon. The statute relieves the state from describing in the indictment for manslaughter, the weapon with which life was taken, or how it was used *170 by the accused, yet it was competent for the state to prove the character of the weapon, its ownership in the accused, and his experience with this and other similar weapons he may have owned. Against the claim of the defendant that the killing was accidental, we can see no objection to all inquiries on his cross-examination which would tend to show his entire familiarity with fire arms of this class and how they might be pointed or aimed at another, while secreted in the coat pocket. We are of the opinion that the trial court did not err in admitting the testimony objected to.
The defendant took exception to the admission of some evidence for the state od rebuttal, but we find nothing admitted which was against the rules, or an abuse of the sound discretion of the court as to the order of its production.
The court was requested by plaintiff in error, to give to the jury nineteen separate instructions, all of which were refused. We have examined these and find there is but one, the fourth, which contains any rule of law necessary to be stated in this case, and it was embraced substantially in the general charge. The others were either irrelevant, or contain elements of self-condemnation, and we give them no further consideration.
We now reach the objections to the charge of the court. After having stated to the jury the issue joined between the state and the accused, and what was putin issue by the plea of not guilty, the following was said to the jury:
“But at the trial however, certain facts are established without dispute. These are, that Sol. S. Wise is dead; that his death resulted from a gunshot wound; that the wound was produced by a bullet discharged from a pistol in the possession and in the pocket of the defendant, Arthur B. Weller. ”
Thus far the court might safely go on the facts before the jury. But as another material fact established without dispute the court said;
“That he (Weller) was in the act of illustrating to the deceased the use of the pistol when shooting from the pocket through his coat under certain circumstances, and that while illustrating the manner of so using the pistol under certain conditions, the pistol was pointed toward Sul. S. *171 Wise and discharged; the ball therefrom entered a vital part of Sol. S. Wise’s body, namely, his heart; and death ensued immediately therefrom; that the discharge of the pistol and the death of Sol. S. Wise occurred on the evening of the 7th of December, 1S98, and in the county of Putnam, and state of Ohio. But the defendant controverts each and all the other elements of the crime and insists that he is innocent of the charge.”
If the court was correct in the summary made, there were no other material facts to controvert, and if each of the facts here narrated had been established without dispute, as the court said to the jury, its duty was plain and a verdict of guilty should have been promptly rendered.
Such a statement of undisputed and established facts would be equivalent to a plea of guilty. As the court put it, the revolver in the possession of defendant at the date and in the county named, was discharged, and it killed Wise, and that it was discharged while defendant was illustrating to the deceased the use of the pistol when shooting from the pocket through his coat, and that while so doing the pistol was pointed toward Sol. S. Wise.
If Weller did all this, he was acting in violation of section 6822 Revised Statutes, making it penal to intentionálly, but without malice, point firearms, and as the discharge killed Wise, Weller was guilty of manslaughter. But was the court warranted in so summing up the undisputed facts? We think not. The special thing which should not have been included in the summary is the following:
‘‘That he, (Weller) was in the act of illustrating to the deceased the use of the pistol when shooting from the pocket through his coat under certain circumstances, and that while so illustrating the manner of using the pistol under certain conditions, the pistol was pointed toward Sol. S. Wise ”
And again, on page 238 of the record, the court assumes to the jury the fact of pointing the pistol, and said:
‘‘The defendant insists that the pointing of the pistol in the direction of the deceased, and the discharge of the pistol, were not intentional but involuntary acts upon his part, and were the result of an accident.”
The record does not sustain the court in thus instructing *172 the jury as to the undisputed and established facts, especially as to the pointing of the pistol.
An examination of the overcoat worn by Weller, at the time of the shooting, tends to show that the ball discharged took an upward course from the pocket through and out of the coat, at a point several inches higher than the bottom of the pocket. It would seem from the heighth of the accused and the course taken by the ball, the muzzle of the revolver may have been elevated in some way, higher than the breech; and counsel for the State argue, that because that position of the weapon is indicated, and that Weller said to Wise, he could shoot through his coat, if assailed, and then put his hand on his pocket or struck his pocket Mith his hand whereat the pistol was discharged and Wise killed, justified the court in so summing up the conceded facts. We are not able to agree with this argument, At best, it is a construction put upon certain circumstances and facts, and not an unfailing conclusion, much less an admission of pointing the weapon. And to settle the question let us for a moment look at the evidence.
. On page 178, in the closing part of Weller’s evidence in chief, appear these questions and answers:
“Q. Now, at the time that you were at the store and struck your hand against your coat, state whether you raised your coat up or not? A. “Not to my knowledge. If I did, it was the action of my hand that raised it. I didn’t lift it voluntarily. Q “You didn’t raise your coat? A. “Not voluntarily, no sir.” Q. “Nor attempt to raise it?’’ “No sir.” Q, “I believe you have said that you didn’t point the pistol nor intend to point it?” A. “I did not, no air,” Q, “You don’t know how it came to be discharged?” A. ‘‘I have no idea how it was discharged — what caused it. ”
The defendant in his evidence elsewhere, denies the pointing of the revolver, and the account of the transaction which he gave to Mrs. Bruon and the arresting officers, is inconsistent with the intentional, or any pointing of the revolver towards Wise. Hence, there was no foundation for submitting this very material point to the jury as one of the undisputed facts, and it was reversible error to do so.
We find error in another part of the charge. On page *173 239 of the record, we find the instruction of the court touching the definition of manslaughter and the nature of the unlawful act engaged in by the defendant when his weapon was discharged, and the jury was correctly told that such ■act was unlawful,, if it was in violation of any of the criminal laws of the state. This, however, was followed by this language:
“The act would also be unlawful, if that act which produced the discharge of the revolver, if you find that Arthur B. Weller did so commit any act that caused the discharge of the revolver, and the killing of Sol. S. Wise by that act, if at the time he committed the act he did it in such a reckless, wanton, careless manner as to be wholly oblivious to the rights and safety of Sol. S. Wise. Life is the highest right of man. To live throughout the span of years naturally allotted to man is the highest gift by law, as it is by nature. Consequently a person handling or having in his possession a deadly weapon, must use such ordinary care, such degree of care as a person of ordinary prudence and caution would exercise under all the circumstances, having a proper regard for the life and safety of the other, and seeking to accomplish the object sought. So that if you find that Arthur B. Weller, in the handling of the revolver, or in placing of his hand upon his pocket, if you find he did so place it, or whatever act he did, if any act you so find that he did, caused the discharge of the revolver, and in the commission of that act causing the discharge of the revolver and the resulting death of Sol. S. Wise, acted in a careless, negligent, wanton manner, wholly regardless of the consequences of his act and the safety and the life of Sol. S. Wise, then if all the other elements of the crime together with that, have been proved to you beyond a reasonable doubt, you vs ill be justified in finding the defendant, Arthur B. Weller, guilty of the crime charged.”
This portion of the charge is misleading, if it has no other vice. It mixes a beautiful sentiment, concerning the value of human life, with a mass of confused and almost unintelligible verbiage.
• The trial court had said, that if the act engaged in by the defendant was in violation of a statute law of the state, that element of the crime of manslaughter was made out; *174 but as quoted, the charge proceeded to open a door to something else, but left the jury without any means of knowing what it was intended for them to find. Tt may be gathered from the language of the court, that if the accused was not violating any statute when the shooting occurred, he might be found guilty, if he was at the time, careless and reckless in the possession and use of the weapon; and the lack of ordinary care and prudence, and a want of regard for the life and safety of Sol. S. Wise, are suggested as a sufficient consideration to make up the element of the crime under discussion. The instruction on this subject was too uncertain and elastic, and placed the defendant at great disadvantage before the jury,
The court should have clearly defined and pointed out, what act or conduct of the defendant at the time of the shooting, was unlawful, and if not unlawful, the defendant was entitled to have it plainly stated to the jury,
It has been said in argument for the state, that the act engaged in by the accused, need not be an act violating a statute of the state, but that it is sufficient if it was a cri^ne or offense at common law,and it is said, that is the meaning the court intended to convey to the jury in the. charge quoted from; and learned counsel have pressed the correctness of this doctrine with great seriousness, and perhaps it deserves more than passing attention.
The present statutory definition of manslaughter in Ohio, is found in section 6811, Revised Statutes, which reads:
“Whoever unlawfully kills another except as provided in the last three sections, is guilty of manslaughter and shall be punished &cc. ’’
The three preceding sections referred to, define murder in the first and second degrees, and murder by obstructing or injuring a railroad.
Section 6811, supra, is the codification of the law as found in 1 Vol. S. & C. P. 403, where manslaughter is defined as follows:
“That if any person shalt unlawfully kill another without malice, either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act, every such person shall be deemed guilty of manslaughter, and on conviction thereof shall be punished etc.’’
*175 This definition is not changed by the revision, but it is embraced in section 6811, although in an abreviated form of language Moreover, it has been found and held by our supreme court, that the legislature, in adopting this statute, had in view the crime of manslaughter as understood at common law, and adopted it in substance and almost in form.
Sutcliffe v. The State 18 Ohio R., 469.
The indictment in this case is in the short form prescribed by section 7217 Bevised Statutes, and simply charged that on the day and in the county named, the defendant, Weller, did unlawfully kill Sol, S. Wise. But to convict under such indictment, it must be proved beyond a reasonable doubt, that the killing was done in a sudden quarrel, or while the slayer was in the commission of some unlawful act. What unlawful act? An act made unlawful by statute, or an act that may have been an offense or crime at common law? The lower court, it seems, considered either sufficient, and the task of determining what the common law is upon the subject, was turned over to the jury without any light for its guide,
We do not agree with the lower court. It is our opinion that to convict one of manslaughter for killing another “unintentionally while the slayer is in the commission of some unlawful act,” the latter act must be shown to be in violation of some statute'law of the state.
We have no common law crimes or offenses in Ohio; and we do not doubt, that it has been the policy of the legislature to provide a system of statutory crimes and offenses— penal statutes, which would regulate the conduct of our citizens in every walk and occupation of life. This system has had a steady growth from the early days of legislation down to the present, and it has been expanded and amplified and intended to embrace and regulate the conduct of people of every class and vocation. And we must observe, that as the peace and good order of society, demanded, new and additional penal leigslation has been enacted. Again, who shall determine now, what is or is not an offense at common law? And within what jurisdiction does it prevail? Do we have some things unlawful in Ohio by reason of statute *176 and others by reason of the common law ?j[J3arely not. The very uncertainty as to common law crimes, was a substantial reason to provide by statute as to what acts shall be unlawful in Ohio. Where would we search to determine what are unlawful acts, unless in our penal code? As to the uncertainty of the common law, we quote from Justice Bradbury’s opinion in Alexander v. Pennsylvania Co., 48 Ohio St., P. 637:
“In theory it may be true, that there is no common law of Ohio or of Pennsylvania; that the common law is one and the same in every state, acknowledging its obligations, and that the decisions of one state are but evidence of it, not binding upon the courts of any other state; but as matter of fact we know that in the application of the rules of the common law to the affairs of men, there is, unfortunately, in the several states a wide divergence; and that it necessarily follows that acts and transactions; sufficient in one state to create a cause of action, will not produce that result in another, and in the administration of justice mere theory must be made to yield to the truth as established by facts and experience. ”
There is another reason presented for the reversal of the judgment of the lower court.
In the closing argument to the jury, the Prosecuting Attorney used certain statistics as follows:
“By the statistics of 1898, there were 10229 homicides committed in the United States. By homicide, we mean where one man kills another. Some of them were accidental. Some of them were manslaughter. Some of them were murder. How many were executed? Not one hundred. Out of ten thousand and more, not one hundred. The judge is asking for more than his share.’’
When this language was objected to by counsel for defendant, the court stated in presence of the jury:'
“You have a right to refer to and comment on matters of common knowledge. Statistical, facts are matters which you have a right to refer to.”
The defendant excepted to the language of the court.
We would not hedge toó closely the latitude of the argument in an impjrtant case. And it may be true that statistics, were here quoted correctly; but the court should not *177 add its sanction to any particular method or means of argument, and thereby give it special prominence. Common knowledge, might or might not properly weigh the small number of conivctions out of so large a class of homicides. If the statistics were correct, they show a failure of justice on account of the ineficiency of officers of the law and the courts. The fault could not be traced to the defendant, and an appeal over the derelection of courts and officers, would not aid the jury in a calm and impartial consideration of the case, but might tend to a conviction, not because of clear and satisfactory testimony, but because convictions heretofore have been entirely too rare.-
Watts & Moore, for Plaintiff in Error,
Bisser, Pros. Attorney, Judge W. H. Handy, for Defendant in Error.
For the errors pointed out, the judgment is reversed; verdict set aside, and the case remanded for new trial.